## THE ARENDAL.    (Two Cases.)*

*(District Court, E. D. Pennsylvania.  December 1, 1882.)*

1. SALVAGE—DERELICT.
    Where a sailing vessel was obliged to anchor several miles off shore, to hold against the current and ice coming down Delaware bay, and the crew sought safety by getting ashore in small boats, leaving the vessel in an unsafe position, intending to return with a tug, and engaged to assist a vessel with a wrecking crew, who, being unable to put their own tugs through the ice, obtained a city ice-boat, owned and used by the city for the purpose of breaking up ice, keeping the channel open, and also performing towage service for pay, and they took the vessel in tow, picked up her crew on their return, and succeeded with difficulty in getting the vessel into the port of Philadelphia several days afterwards, the facts do not make a case of technical derelict, but all who participated in the rescue must be regarded as salvors.

2. PUBLIC VESSELS—CITY ICE-BOAT—DUTY OF.
    A city ice-boat, owned and used by the city for the purpose of breaking up ice, keeping the channel open, and performing towage service for pay, is under no more obligation to rescue a wrecked or disabled vessel than other vessels equally competent and similarly situated; if, however, the master was more intent upon making salvage than discharging his first duty of keeping navigation open, this fact should be considered, and he should be rewarded accordingly, or not at all.

3. RATE OF COMPENSATION.
    The sum allowed for salvage service should be sufficient to cover the expense, time, labor, skill, risk to property and person, and to reward fully the enterprise displayed. In this case, (value of ice-boat being $245,000, having a crew of 30, the wreckers having 8 or 10 men, the value of the bark, cargo, and freight being about $28,600,) the circumstances of the case do not call for a large award, or any given proportion of the property saved; $2,500 is sufficient.

4. DISTRIBUTION AMONG LIBELANTS.
    Distribution will be referred to a commissioner, who may take further testimony of the conduct of the master of the ice-boat, if it be deemed necessary, and the subject be considered in the distribution.

*Reported by Albert B. Guilbert, Esq., of the Philadelphia bar.

In Admiralty.

Libel filed by Henry F. Virden, master of City Ice-boat No. 3, on behalf of himself as master, and of the city of Philadelphia as owner, and of the crew of said boat, consisting of 30 men, against the bark Arendal, setting forth that on the fourth day of February, 1881, the boat, with an additional crew of eight or ten wreckers, proceeded to search for the bark Arendal, reported to have been abandoned in the ice fields off the Delaware capes, and after great difficulty found the bark at 1 o'clock P. M. in a dangerous position, 15 miles from Cape Henlopen and 5 miles off shore, hard fast in the ice, drifting seaward, and at a distance of 10 miles from the place where she had been abandoned; that proceeding with great difficulty the bark was towed into harbor at breakwater, at 11 o'clock P. M. of the same day, and afterwards the boat picked up the crew of the bark, who had come from the life-saving station near Indian river, and continued with her tow through the ice, reaching Walnut street, Philadelphia, at 3 P. M., February 8, 1881; that the ice-boat was built by the city of Philadelphia costing $245,000, and was not constructed for the character of service performed, and the value of the bark, her cargo, and freight is $28,600. Wherefore the libelants claimed to be entitled to salvage. Also a libel filed by E. J. Morris for E. J. Morris & Co., wreckers, setting forth that on the third day of February, 1881, libelants contracted with the master of the bark, which was then outside Rehobeth beach, leaking and nearly cut through with ice, to get the bark and tow her into the breakwater, and to stay by and deliver her to the port of Philadelphia, compensation therefor to be left to the board of marine underwriters of Philadelphia; that the libelants were unable, on account of the ice, to use their tugs North America and Pioneer, and therefore procured the City Ice-boat No. 3, and with eight or ten of their own men proceeded in her, under the command of her captain, to the bark, and finally with danger and difficulty towed the bark into Philadelphia. Wherefore the libelants claim salvage to be awarded, since the city ice-boat had filed a libel, and the compensation could not, therefore, be determined by the board of underwriters.

The respondents, in answer to both libels, claimed that the bark had not been abandoned; that Morris & Co. had failed to perform their contract, but assisted and acted under the command of the city ice-boat, whose master acted badly in refusing to pick up the crew of her bark, while attempting to return, and in not taking them up until after the bark was in tow, and also in persisting in charge of

the tow after her crew had declined their assistance, and contended that towage services only had been rendered, for which the regular rate would be less than $250, while $500 had been offered in settlement and refused; that the interests of commerce required that salvage should be refused to the city ice-boat, who acted without any contract with the trustees and in the line of its duty, being owned, equipped, and run by the city for the purpose of breaking the ice, keeping the channel clear, and performing towage services for pay, according to a schedule of rates adopted under a city ordinance, (West, Dig. 199,) which provided:

Sec. 2. "It shall be lawful hereafter for the trustees of the ice-boat to charge and collect such rates of towage for the services of the ice-boats under their care as they may deem best for the interests of the commerce of this port."

Sec. 3. "It shall be lawful for the trustees of the city ice-boat to allow the said boat to be used upon an occasion of imminent peril to any ship or vessel, for the relief of such ship or vessel, whether the same be needed in the Delaware river or bay, or on the adjacent coast: provided, the said boat shall always be first insured for a proper amount by the person for whose benefit she shall be so employed, and that the trustees make such charge for such use of said boat as they may deem adequate therefor."

*Wm. Nelson West* and *Wm. H. Addicks,* for ice-boat and city of Philadelphia.

A public vessel is entitled to salvage. *The Cybele,* 37 Law Times Rep. 165.

*Alfred Driver* and *J. Warren Coulston,* for the crew of the ice-boat.

*Theodore M. Etting* and *Henry R. Edmunds,* for Morris & Co.

The contract, not being for a sum certain, is no bar to a claim for salvage. *The A. D. Patchin,* 1 Blatchf. 414; *Adams* v. *Island City,* 1 Cliff. 216; *Coffin* v. *The Shaw,* Id. 235. The claim does not depend upon the *status* of other salvors. *The Blackwall,* 10 Wall. 1; *The Ewbank,* 1 Sumn. 416; *Adams* v. *Island City, supra; Norris* v. *Island City,* 1 Cliff. 219.

*Edward F. Pugh* and *Charles C. Lister,* for the Arendal.

Misbehavior bars claim for salvage. *The Choteau,* 9 FED. REP. 211. The bark was not a derelict. *The Hyderabad,* 11 FED. REP. 749; *The Cosmopolitan,* 6 Notes Cas. (Supp.) 17; *The Aquilla,* 1 C. Rob. 40. A public vessel, acting in the line of its duty, not entitled to salvage. 2 Parsons, Shipp. 273, note 6; 7 Op. Atty. Gen. 756; *The Choteau,* 9 FED. REP. 211; *Davey* v. *The Mary Frost,* 2 Woods, 306; *The Josephine,* 2 Blatchf. 322. The ice-boat may claim the

amount fixed by the schedule of rates for towage. *The Belle*, Edwards, 66; *Ex parte Cahoone*, 2 Mason, 87; *The Aquilla*, 1 C. Rob. 48; Conkl. Adm. Jur. 274. Or a mere remuneration. *The Thetis*, 3 Hagg. 14; *The Mary Ann*, Id. 158; *The Rapid*, Id. 154.

BUTLER, D. J. While the respondent was not, in my judgment, "derelict," (Conkl. Adm. 359, 360; *The Hyderabad*, 11 FED. REP. 749,) she was in very great distress and danger; and her rescue was a salvage service.

All who participated in the rescue must be regarded as salvors. The ice-boat and her crew owed the respondent no duty which required the services rendered. As appears by the original city ordinance on the subject, the ice-boats were established for the purpose of breaking up ice on the Delaware river, and keeping the channel open to navigation. This is the duty to which they are primarily devoted—for the performance of which no compensation can be demanded under any circumstances. Towage was a secondary consideration, not referred to in the original ordinance, and is performed under contract, for compensation, as by all other tugs, except that the rate of compensation, is generally established in advance by schedule. The boat was therefore under no greater obligation to rescue the respondent than any other vessel equally competent and similarly situated, would have been. She and her crew, as well as the wreckers taken on board, must, therefore, be treated as salvors. The city's ownership of the boat must, in view of the authorities, if not otherwise, be deemed unimportant.

What sum should be allowed? It should be sufficient to cover the expense, time, labor, skill, risk to property and person, incurred and expended, and to reward, fully, the enterprise displayed. The risk, skill and enterprise were not large. The time, labor, and cost—considering the value of the boat, and quantity of fuel consumed—were greater. The circumstances of the case do not call for a large award. There are few instances of salvage, in my judgment, considering the value of the property saved, where the sum should be materially less. Twenty-five hundred dollars is, I think, amply sufficient, and this sum is allowed. The libelants are not entitled to any given proportion of the property saved, but simply to compensation and reward according to the merit of their services and conduct.

I am not sure the conduct of the boat's master was in all respects commendable. It looks a little as if he was more intent upon making salvage than discharging the duty of keeping navigation open to vessels, less powerful than his own. This appearance may, however, be

dispelled by further investigation. The subject must be considered in distributing the sum awarded; and if the master's conduct is found to be such as here suspected, he should be rewarded accordingly, or not at all. In pursuance of the understanding between the libelants, the distribution will be referred to a commissioner, before whom further testimony respecting the master's conduct may be heard, if deemed necessary.

It is highly important that the officers of the ice-boats shall not allow their attention to be diverted from the important duty of keeping the channel open, by the temptation to seek prizes, elsewhere.

---

## The Mary.*

*(District Court, E. D. Pennsylvania. November 20, 1882.)*

1. TOWAGE—NEGLIGENCE—PROXIMATE CAUSE—BURDEN OF PROOF.

   In an action to recover damages for the loss of a barge three days after alleged negligent towage, the burden of proof rests upon the libelant to show that the alleged negligence was the proximate cause of the injury.

2. TOWAGE CONTRACT CONSTRUED.

   Where a railroad company sold a ticket, stipulating that the tug Delaware would tow the libelant's barge to Smyrna, Delaware, and, by an arrangement with that tug, the tug Mary took the former's place, received the ticket, but with the libelant's consent towed the barge to the mouth of Smyrna creek, eight miles below the town, and three days afterwards the barge, while being poled up, grounded and was lost, the tug Mary is not liable for failure to tow up to the town.

In Admiralty. Hearing on libel and answer.

Libel filed by Michael Reilly, master of the barge Chihuahua, for damages occasioned by the loss of the barge, which, the libelant contended, had been taken in tow by the tug to be towed to the town of Smyrna, Delaware, but was abandoned in an unsafe place in Smyrna creek, eight miles from the destination, and while poling up grounded and became a total wreck. It appeared that an agent of the Philadelphia & Reading Railroad Company sold to libelant a ticket, stipulating that the tug Delaware would tow the barge to Smyrna, Delaware, and that by an arrangement with that tug and the Mary, the latter took her place, received the ticket, and towed the barge four miles up the creek at the first bridge, but eight miles from the town, and three days afterwards, while poling up the creek, the

*Reported by Albert B. Guilbert, Esq., of the Philadelphia bar.